**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:05CV434-MU**

| | |
|---|---|
| **GREYSTONE DIGITAL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **ORDER** |
| ) | |
| **CHESTER CREEK TECHNOLOGIES,** ) | |
| **INC., JAMES F. GUSTAFSON, JACK** ) | |
| **THOMAS, and MICHAEL E. ORMAN,** ) | |
| ) | |
| **Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

      **THIS MATTER** comes before the Court on Defendants' Motion to Dismiss or, in the Alternative, to Stay. Originally brought in state court for several claims related to the proprietary use of a design for computer keyboards with oversized keys and associated trademark issues, this action has been removed to federal court and is now challenged on grounds of personal jurisdiction, insufficiency of process, and failure to state a claim upon which relief can be granted. After reviewing the briefs filed and related affidavits and other evidence, the Court will GRANT Defendants' motion in part and DENY it in part. The Court refrains from passing judgement as to its personal jurisdiction over Defendant Chester Creek Technologies, Inc., until further evidence is adduced, and will issue a separate order directing that inquiry.

## I.    BACKGROUND

      Plaintiff Greystone Digital, Inc., ("Greystone") entered into a consent judgement with Secret Seven Corporation ("Secret Seven") in January of 2004, assigning to Greystone all rights in the tooling, a manufacturing device, used to create Secret Seven's My Board I and My Board II computer keyboards. Soon thereafter, in circumstances not presented to the Court, Wells Fargo Bank

("Wells Fargo") exercised a security interest it held in Secret Seven's assets. Defendant Chester Creek Technologies, Inc., ("Chester Creek") volunteered to aid Wells Fargo in the liquidation sales of those assets and ultimately acquired most of them itself, including Secret Seven's customer lists, facilities, and furnishings.

Defendants Gustafson, Thomas, and Orman (collectively, "the individual defendants") are all officers in Chester Creek. Defendant Gustafson, the majority owner and Vice President of Chester Creek, was an owner of Secret Seven and served as its CEO for a time. Chester Creek hired employees of Secret Seven, including George Kessler, Secret Seven's former president and a party to the consent judgement, as a consultant. Both Chester Creek and Secret Seven then sent out letters to Secret Seven's customers, stating that "the name is changing" but that Chester Creek consisted of the same people and products as Secret Seven, and would carry on Secret Seven's business.

After the asset acquisition, Chester Creek altered the tooling of the My Board II keyboard, in possession of a Korean manufacturer, to create the My Board III. It then proceeded to market the My Board III without concern for Greystone's ownership of the My Board II tooling or for its intellectual property. Additionally, Chester Creek entered a contract with Google, Inc. to advertise its product whenever Greystone's trademarked term "BigKeys" was entered in the Google search engine.

## II.  DISCUSSION

### A) Personal Jurisdiction

#### i. Standard of Review

When personal jurisdiction is properly challenged under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the

evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Id. Where an evidentiary hearing is not conducted, the plaintiff need only make a prima facie showing of jurisdiction. Id.; see also New Wellington Financial Corp. v. Flagship Resort, 416 F.3d 290, 294 (4th Cir. 2005). In those circumstances, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676.

ii. Personal Jurisdiction Over Chester Creek

Plaintiff claims, and Defendants do not dispute, that personal jurisdiction would exist over Secret Seven were it the defendant in Chester Creek's place. Likewise, Plaintiff does not dispute that Chester Creek, viewed independently of Secret Seven, lacks the minimum contacts required by our Due Process jurisprudence to support a finding of personal jurisdiction. See International Shoe Co. v. State of Washington, 326 U.S. 310 (1945) (formulating the minimum contacts standard as a means of satisfying Due Process). The main issue, then, is whether or not Chester Creek can be properly viewed as a mere continuation of Secret Seven, and therefore subject to North Carolina jurisdiction just as Secret Seven would be. The Court is unprepared to resolve this issue at this time.

In determining Plaintiff's state law claims, the Court must apply North Carolina state law. See Eerie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Though Plaintiff urges the Court to employ a "substantial continuity" test to determine Chester Creek's successor liability, North Carolina law sharply restricts this test to areas where strong public policy overrides the traditional rules limiting successor liability. G.P. Publications, Inc. v. Quebecor Printing– St. Paul, Inc., 481 S.E.2d 674, 681(N.C. Ct. App. 1997). A review of the case law from North Carolina, and indeed, from across

the nation, shows that the only cases where the substantial continuity test has been applied to a scenario where one company acquires the assets of another involve either the National Labor Relations Act ("NLRA") or the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), both areas where Congress specifically set forth strong reasons to hold a successor liable for the acts of its predecessor. Id. In ordinary cases of asset-acquisition, generally involving liability for debt, North Carolina applies the traditional "mere continuation" test, which looks to four factors: 1) continuity of owners and directors between the two corporation; 2) the existence of only one corporation after the acquisition; 3) inadequacy of considerations; and 4) lack of some of the elements of a good faith purchaser for value. Id. at 680. The first factor, continuity of ownership, is the most important. Id. at

Though here, successor liability serves the public policy of preventing corporations from escaping legitimate consent judgements, the Court cannot fairly say that this rises above the policy of the ordinary scenario, preventing corporations from escaping legitimate debt. It certainly does not rise to the level of the clearly expressed public policies in the NLRA and CERCLA, where Congress specifically expressed an intent that successors be held liable. Thus, the Court must apply the mere continuance test, rather than the substantial continuity test.

It is unclear to the Court whether Chester Creek is a mere continuation of Secret Seven. The circumstances of the Wells Fargo foreclosure and the subsequent asset acquisition, for example, remain cloudy. Likewise, though Secret Seven still exists, there is no evidence as to whether it continues to operate or survives on paper only. These are factual matters that the Court currently lacks sufficient evidence to decide, and therefore a further evidentiary inquiry is required. To that end, the Court will issue a separate order directing the parties to proceed towards a resolution of this most important issue.

<u>            iii. Personal Jurisdiction Over the Individual Defendants</u>

Though the Court's jurisdiction over Chester Creek is in dispute, there is little to support jurisdiction over the individual defendants. Plaintiffs actually concede that this is the case, but attempt to rely on the notion of pendant personal jurisdiction to enable the Court to rope these defendants into this action. This misconstrues the law. The idea of pendant personal jurisdiction involves a single defendant facing multiple claims, not, as here, multiple defendants facing a single claim. Because a defendant must already face whatever inconvenience lies in appearing before the court when personal jurisdiction exists over a single claim, he suffers no additional inconvenience from answering other related claims, and the goals of personal jurisdiction are satisfied. <u>ESAB Group v. Centricut, Inc.</u>, 126 F.3d 617, 628 (4th Cir. 1997). Essentially, this doctrine tells a defendant, "as long as you're here, you may as well defend these other claims." This is clearly inapplicable where personal jurisdiction exists over one *defendant*, but not another; the second defendant does not otherwise have to appear before the court, and therefore extending jurisdiction to him raises all the concerns the previous example does not. As there is no independent basis for personal jurisdiction over the individual defendants, and they must be dismissed from the action.


**B) Insufficient Service of Process**

Defendants' claim that Plaintiff failed to properly serve process on Chester Creek because the receptionist who signed for the package containing the summons was not a proper agent for that purpose. This is nonsense. Plaintiff undisputedly mailed a properly addressed summons, in full compliance with the North Carolina Rules of Civil Procedure, to Defendant Orman, care of his law firm, in his role as an officer of Chester Creek. The package was signed for by the firm's receptionist, and Defendants do not allege that she failed to properly pass it on to Orman.

Defendants argue, however, that service was improper because the receptionist was not authorized to accept service of process for Chester Creek. This claim is simply fatuous. Under the North Carolina Rules of Civil Procedure, a plaintiff may serve process through an appropriate mailing to a corporate officer in care of another corporation, and the mailing need only be signed for by an authorized agent of that officer. Poole v. Hanover Brook, Inc., 239 S.E.2d 479, 481 (N.C. Ct. App. 1977). Defendants cannot seriously contend that the receptionist of Orman's law firm (where he is the first named partner) was not authorized to receive packages for Orman. That she was not authorized to receive service of process is irrelevant; as her affidavit revealed, she did not and could not know what the package contained when she signed for it. All that matters is that the receptionist was authorized to receive mailings for Orman, and nothing in Defendants' briefs or the receptionist's affidavit dispute that conclusion. Especially in light of the fact that other attempts to mail summonses to Chester Creek's proper address were returned unclaimed, it is clear that Chester Creek was properly served despite its best efforts to the contrary.

Defendants also assert insufficient service of process as to the individual defendants, as well as failure to state a claim upon which relief can be granted. As all claims against these defendants must be dismissed due to lack of personal jurisdiction, it is not necessary to reach these issues. Additionally, Defendants seek to stay this action under the Colorado River doctrine. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). As the litigation here preceded the parallel litigation in Minnesota by some months and no other factors significantly weigh in favor of a stay, the Court declines to cede what jurisdiction it may have over the matter. Defendants' motion to stay is therefore denied.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss claims against Defendants Gustafson, Thomas, and Orman for lack of personal jurisdiction is **GRANTED**.

Defendants' Motion to dismiss for insufficient service of process and motion to stay are **DENIED**.

The Court refrains from passing judgement over Defendants' claim of lack of personal jurisdiction

as to Chester Creek until further discovery has been completed.


Signed: March 1, 2006


Graham C. Mullen
United States District Judge